IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOSEPH FRANK LEE,

     Plaintiff,

v.                                CASE NO. 1:11-cv-27-MP-GRJ

ALACHUA COUNTY, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff, a prisoner presently incarcerated at Taylor Correctional Institution, initiated this case by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).  Plaintiff was granted leave to proceed as a pauper and has paid an initial partial filing fee. Plaintiff's claims stem from a viral illness that he suffered while he was a pretrial detainee at the Alachua County Jail.   Upon careful consideration of Plaintiff's Complaint, it is recommended that this case be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## Plaintiff's Allegations

     The factual allegations of the Complaint may be summarized as follows.  In March 2009, an outbreak of a virus at the Alachua County Jail caused numerous inmates and corrections officers to suffer from vomiting and diarrhea.  Plaintiff began experiencing symptoms around 4:15 a.m. on March 9.  Plaintiff vomited and experienced nausea, diarrhea, chest and stomach pain, and uncontrollable shaking.  A corrections officer approached Plaintiff, and Plaintiff requested medical treatment.  The officer stated "you've got that virus," and told Plaintiff he would call the medical

department and relay Plaintiff's symptoms.   Within 30 or 45 minutes, the officer told Plaintiff that the nurse on duty said there was a virus going around and that Plaintiff should stay in bed and drink plenty of water.  Plaintiff was unable to eat due to nausea and chest and stomach pain, and could not keep water down.

At around 8:00 a.m., Plaintiff approached an officer and requested to go to the medical department.  The officer told Plaintiff to go back to bed and continue drinking water as the nurse had instructed.  Plaintiff continued to experience severe viral symptoms through the night of March 9.

On March 10, 2009, Plaintiff was unable to eat and continued to experience symptoms including severe diarrhea and vomiting, and chest, stomach, and rectal pain. Plaintiff's symptoms caused him to soil his clothes.  While he was in the bathroom, another inmate brought an officer to see him.  Plaintiff asked to go to the medical department, but the officer told Plaintiff that the nurse was not permitting inmates to go to the medical department because all of the beds were occupied.  The officer told Plaintiff that a nurse was bringing Pepto-Bismol tablets to the sick inmates.  At around 1:30 p.m. on March 10, Plaintiff received Pepto-Bismol.  The nurse would not give Plaintiff a sick-call slip because the medical department was not accepting sick call requests from inmates who were complaining about viral symptoms.   Plaintiff told the nurse that drinking water made his symptoms worse and that he had high blood pressure and wanted to have his blood pressure checked.  The nurse told Plaintiff that he was only on the pods to distribute Pepto-Bismol.

Plaintiff alleges that he fell asleep or passed out.  He awoke on the night of March 10 around 10:40 p.m.  He was thirsty and shaking uncontrollably, and had

severe stomach pain, shortness of breath, and dizziness.  He alleges that he passed out again, and awoke after falling out of bed and hitting his head.  Other inmates helped him back into bed, and he drank some more water and vomited.  An officer came to his bed, and Plaintiff requested medical treatment for his stomach.  The officer told Plaintiff he would have to "wait, like the nurses said, until the virus plays itself out."  Plaintiff alleges that this response caused "outrage" among the inmates.  A shift supervisor was called, and Plaintiff told the supervisor that he had been sick with the virus for two days. He asked to see a doctor in order to receive medication for his stomach pain, but the supervisor ordered him to go back to bed.  Plaintiff asked for a grievance form, but the supervisor said "there's nothing to file a grievance for . . . the nurses know about the virus and have told [Plaintiff] to stay in bed and drink plenty of water and wait for the virus to play itself out."

Plaintiff alleges that he fell asleep, or passed out, and was awakened on the morning of March 11 by an officer who told Plaintiff that he had a court hearing. Plaintiff was still unable to eat or drink, and again asked to go to the medical department.   The officer did not take Plaintiff to the medical department.  The officer told Plaintiff to take a shower and brought Plaintiff clean clothing for the hearing. Although Plaintiff was in weak physical condition, he attended the hearing.  The court asked about his condition and the jail officers informed the court that there was an outbreak of a virus at the jail, and that Plaintiff was one of the affected inmates.  Plaintiff told the court that he was able to proceed with the hearing, but Plaintiff's counsel was not prepared and obtained a continuance.  Plaintiff alleges that he was helped from the hearing by two officers and that he was "drifting in and out of consciousness."  Plaintiff

alleges that he fell in the sally-port and hit his head.  He was carried into the jail by another inmate and placed in a wheelchair.  Plaintiff was shaking uncontrollably from chills, and was helped into his bed where he fell asleep or passed out.

Plaintiff awoke gasping for air and very thirsty.  He got out of bed to get water, but fell and hit his head.  He awoke in a wheelchair being pushed into the medical department, where he was placed in a bed.  Plaintiff alleges that the next thing he recalls is being shaken awake by a nurse, who then ran from his bedside.  Plaintiff heard voices calling his name, and then saw firemen who yelled at Plaintiff to stay awake.  Plaintiff passed out again, and awoke in a bed at North Florida Regional Medical Center.

Plaintiff was hospitalized for four days, from March 12-16, 2009.  Plaintiff does not describe the treatment he received at the hospital.  Plaintiff alleges that following his return to the Alachua County Jail the Defendants' "deliberate indifference to my serious or substantial medical needs continued," in that Defendants "ignored or disregarded my need for medical follow up care or the medical follow up care was inadequate."  Plaintiff alleges that as a result he now suffers pain in his kidneys, stomach, intestines, groin, and bladder, and shortness of breath, which Plaintiff attributes to damage or scarring caused by "the delay in medical care."

Plaintiff names as Defendants "Alachua County, Alachua County Commissioners, [Sheriff] Sadie Darnell, Robert Woody, Prison Health Services, Inc.," and unnamed John Doe officers and nurses.  Plaintiff alleges that Defendants were deliberately indifferent in diagnosing or failing to diagnose his illness, which he describes as "clostridium difficile colitis, gastroenteritis, acute tubular necrosis versus

prerenal, thrombocytopenia, dehydration and hyporolemia, including, renal or kidney

failure."   Plaintiff alleges that Defendants were deliberately indifferent in failing to

prevent the onset of his illness, and that a delay in treatment caused life-threatening

side effects.  Plaintiff contends that Defendants had a "custom, policy, or practice" of

vesting complete medical authority in jail officers, but did not provided adequate training

to such officers in recognizing when medical treatment is required.  Plaintiff seeks

compensatory and punitive damages.

## <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915(e)(2), "notwithstanding any filing fee, or any

portion thereof, that may have been paid, the court shall dismiss the case at any time if

the court determines that . . . the action . . . fails to state a claim upon which relief may

be granted."

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an

act or omission committed by a person acting under color of state law deprived him of a

right, privilege, or immunity secured by the Constitution or laws of the United States.

*Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot

satisfy these requirements, or fails to provide factual allegations in support of the

claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a

right to relief above the speculative level," and complaint "must contain something more

. . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action"); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53

(2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory

allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (*overruled on other grounds* by *Iqbal).*

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment.  Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause, rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause.  *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n. 3 (11th Cir.2007).  However, pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably. *Id.*

To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an

objectively serious medical need," so grave that, "if left unattended, poses a substantial

risk of serious harm," and (2) that the officials' response was so inadequate as to

"constitute an unnecessary and wanton infliction of pain," and was not "merely

accidental inadequacy, negligence in diagnosis or treatment, or even medical

malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th

Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

      Generally, an inmate who receives a medical diagnosis and care, but desires a

different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb*

*County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505

(11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s

*Estelle* teaches, the question of whether governmental actors should have employed

additional diagnostic techniques or forms of treatment is a 'classic example of a matter

for medical judgment' and therefore not an appropriate basis for grounding liability

under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*,

871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the

propriety or adequacy of a particular course of treatment.  Along with all other aspects

of health care, this remains a question of sound professional judgment.'") ( quoting

*Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d

698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment given is

adequate, the fact that a prisoner might prefer a different treatment does not give rise to

an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988)

("Although the Constitution does require that prisoners be provided with a certain

minimum level of medical treatment, it does not guarantee to a prisoner the treatment

of his choice.").

### Discussion

Assuming that Plaintiff's viral symptoms amount to an objectively serious medical

need, the facts alleged by Plaintiff do not support a conclusion that Defendants'

response was so inadequate as to "constitute an unnecessary and wanton infliction of

pain."  *See Taylor*, 221 F.3d at 1258.  Plaintiff's allegations reflect that he exhibited

severe viral symptoms beginning on the morning of March 9, 2011.  Plaintiff's

allegations further reflect that the jail was in the midst of a viral outbreak, and that many

inmates and officers were suffering from similar symptoms.  Plaintiff's allegations show

that jail officials immediately reported Plaintiff's symptoms to the nurse on duty, who

recommended that Plaintiff stay in bed and drink plenty of water until the virus ran its

course.  Affected inmates were provided with Pepto-Bismol tablets.  The type and

duration of symptoms described by Plaintiff – though clearly unpleasant – are familiar to

anyone who has suffered from a severe stomach virus, as is the course of treatment

implemented by the nurse.  Although Plaintiff contends that he should have been

treated within the medical department, in view of the fact that the jail was in the midst of

an outbreak and there were no available beds in the medical department, the decision

to have affected inmates remain in their pods reflects an exercise of medical judgment

that does not provide a basis for liability under the Eighth Amendment.  *See Waldrop*,

871 F.2d at 1033.  Outbreaks of contagious viruses are a normal incident of human life,

and Plaintiff has alleged no facts suggesting that jail officials inflicted unnecessary and wanton pain upon him by failing to prevent him from contracting a virus that afflicted many other inmates.

Plaintiff's factual allegations show that his viral symptoms worsened on the night of March 11 or early on March 12, 2009 (two to three days after the onset of symptoms), when he got out of bed to get water and fell, hit his head, and passed out. His allegations show that he was taken to the medical department, and from there was transported to a hospital where he received unspecified treatment for four days.  There is nothing in the sequence of events described by Plaintiff that suggests that Defendants' response to his needs was constitutionally inadequate; indeed the allegations support a conclusion that Defendants' actions, in the face of Plaintiff's worsening symptoms, were prompt and appropriate.

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs following his release from the hospital, but Plaintiff has alleged no facts in support of that claim and such conclusional allegations do not support a basis for relief under § 1983.  Liberally construing the Complaint, Plaintiff alleges that as a result of complications from his viral illness he now suffers from abdominal pains and shortness of breath, but – as explained above – Plaintiff's factual allegations do not support a conclusion that any such remaining effects are the result of a violation of his Eighth Amendment rights by Defendants.

## Conclusion

For the foregoing reasons, the Court concludes that the allegations of the Complaint fail to state a claim upon which relief may be granted.  It is respectfully

**RECOMMENDED** that the Complaint, Doc. 1, be **DISMISSED** pursuant to 28 U.S.C

§ 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted..

    **IN CHAMBERS**  this 4th day of May 2011.

                        s/Gary R. Jones
                        GARY R. JONES
                        United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>

    **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**